UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>LEXINGTON INSURANCE COMPANY,<br><br>　　　　　Defendant. | CAUSE NO.: 2:22-CV-345-TLS-JEM |

**OPINION AND ORDER**

This matter is before the Court on Lexington Insurance Company's Motion to Dismiss [ECF No. 10]. For the reasons set forth below, the Court grants in part and denies in part the motion.

**MOTION TO DISMISS STANDARD**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint challenged by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## FACTUAL AND PROCEDURAL BACKGROUND

Figg Bridge Builders, LLC (Figg) entered into an Engineering, Procurement and Construction Agreement (EPC Agreement) with Cline Avenue Bridge, LLC (CAB) for the design and construction of the Cline Avenue Bridge in Lake County, Indiana. Compl. ¶ 6. Under the EPC Agreement, the Plaintiff Great American Insurance Company (Great American), as surety, issued performance and payment bonds for Figg in favor of CAB. *Id.* ¶¶ 7–8.

In consideration for the bonds, Great American relied on an Agreement of Indemnity (AOI) by Figg and other entities, and Figg authorized Great American to file a UCC Financing Statement. *Id.* ¶¶ 9–12. As a result, Great American was granted a security interest in Figg assets set forth in paragraphs (a)–(i) of the AOI section titled "Assignment," including the proceeds from all causes of action, all amounts due from any contract, and all accounts receivable. *Id.* ¶¶ 10, 11; *compare* Compl. Ex. 2, pp. 1-12 ("Assignment" ¶¶ (a)–(i)), ECF No. 1-12, *with* Compl. Ex. 3, p. 3 (UCC Financing Statement "attached collateral description"), ECF No. 1-3.

Defendant Lexington Insurance Company (Lexington) issued to Figg two liability insurance policies (commercial general liability and professional liability) and an excess liability policy. Compl. ¶ 13.

From January through April 2020, Great American advanced $14,750,000 under the AOI related to Figg's performance of the EPC Agreement. *Id.* ¶ 17.

On April 7, 2020, CAB wrongfully terminated Figg from the bridge project prior to its completion. *Id.* ¶ 14. CAB then submitted to arbitration a claim against Figg for breach of the EPC Agreement, and Figg asserted counterclaims against CAB in the arbitration proceeding. *Id.* ¶ 22. Lexington represents that it spent millions of dollars on Figg's defense in the arbitration. *See* Compl. Exs. 6, 7, ECF Nos. 1-6, 1-7. Figg paid a far smaller amount out of its own pocket to pursue its counterclaim against CAB. *See* Def. Mot. 2, ECF No. 10.

Following the termination of the EPC Agreement, Great American received payment bond claims from subcontractors and suppliers resulting in the payment of an additional $4,121,604.44. Compl. ¶ 17.

On August 10, 2020, CAB sued Great American in Lake County, Indiana, Superior Court in connection with CAB's claims under the performance bond. *Id.* ¶¶ 19–20.[1]

On August 31, 2020, Great American filed the UCC Financing Statement covering the interests Figg assigned to Great American under the AOI, with an effective date retroactive to the date of the first bond issued by Great American. *Id.* ¶ 12. Great American alleges that the UCC Financing Statement encumbered the assets that are the subject matter of this litigation—the net arbitration award described below. *Id.*

On February 10, 2021, Great American filed a third-party complaint against Figg in the state court case, with an amended pleading filed on January 24, 2022, alleging that Figg breached the AOI and must indemnify Great American. *Id.* ¶¶ 18–20; *see* Def. Ex. A, ECF No. 10-1; *Cline Ave. Bridge, LLC v. Great Am. Ins. Co.*, 45D01-2008-PL-000517 (Ind. Super. Ct. filed Aug. 10, 2020).

On July 15, 2022, the arbitration panel issued an award, holding that CAB owed Figg a total net amount of $4,404,809.32 (Net Award Amount). Compl. ¶¶ 24–25. This Net Award Amount in favor of Figg was based on an award to CAB of $3,706,795.00 on its claims against Figg for defective work and $1,560,300 in liquidated damages and on an award to Figg of $4,939,423.98 against CAB in wrongful termination damages and $4,732,480.34 in attorneys' fees. Compl. Ex 4, p. 77, ECF No. 1-4. The attorneys' fees award was based on the finding that CAB's conduct in terminating Figg from the project was a material breach of the EPC Agreement's terms and conditions. Compl. Ex. 4, p. 76. The arbitration panel held that "[Figg] is entitled to an award of reasonable attorneys' fees and costs directly arising out of CAB's wrongful termination of [Figg]." *Id.*

---

[1] The Court takes judicial notice of the public records in the state court proceedings.

3

On August 1, 2022, Great American wrote to CAB, reminding CAB of Great American's security interest, providing a copy of the UCC Financing Statement, asserting the Net Award Amount is subject to Great American's security interest, and demanding CAB pay the Net Award Amount to Great American or pay the funds via joint check made payable to Great American and Figg. Compl. ¶ 27; *see also* Compl. Ex. 5, ECF No. 1-5.

Prompted by Great American's letter, Lexington in turn wrote to CAB on August 8, 2022, contending that Lexington had advanced $2,179,468.83 to Figg for payment of attorneys' fees and expenses and that "Lexington has an unambiguous contractual right to all of Figg's rights to recover such amounts from CAB." Compl. ¶ 29 (quoting Compl. Ex. 6). Lexington "insisted" that CAB pay $2,179,468.83 of the Net Award Amount to Lexington, with the amount subsequently revised to $2,064,634.54. *Id.* ¶¶ 30, 33; *see* Compl. Exs. 6, 7.

In its Complaint, Great American alleges that Lexington has neither a contractual right to the Net Award Amount nor a judgment providing Lexington with any legal interest in the Net Award Amount. Compl. ¶ 31. In contrast, Great American, by its perfected security interest through the filed UCC Financing Statement, has a legal, contractual, perfected, first, best, and superior right to payment of the Net Award Amount to the exclusion of all others. *Id.* ¶ 32.

On August 12, 2022, Great American wrote to Lexington, attaching the UCC Financing Statement, informing Lexington of Great American's perfected, first, best, and superior interest in the Net Award Amount, and notifying Lexington that its demand for payment of any portion of the Net Award Amount constituted tortious interference with Great American's rights. *Id.* ¶ 34; *see also* Compl. Ex. 8, ECF No. 1-8. Great American demanded that Lexington withdraw its demand for payment. Compl. ¶ 34; Compl. Ex. 8. The same day, Lexington wrote to Great American, claiming its right of subrogation to all of Figg's claims and rights to recover from CAB the monies Lexington paid for Figg's defense and refusing to withdraw its demand for payment. *Id.* ¶¶ 35, 36. Great American alleges that Lexington has not obtained an order entitling it to recover any sums from its insured, Figg. *Id.* ¶ 37.

On August 12, 2022, CAB filed a motion to interplead the Net Award Amount in the state court lawsuit because it was exposed to conflicting claims for the award, and the state court granted the motion on September 15, 2022. *Id.* ¶ 38; Def. Ex. B, ECF No. 10-2. On August 23, 2022, Figg filed a petition in state court to confirm the arbitration award, Def. Ex. C, ECF No. 10-3, and on October 12, 2022, CAB moved to vacate the arbitration award. Def. Ex. D, ECF No. 10-4. On November 8, 2022, Lexington filed a motion to intervene in the state court proceedings to protect its asserted subrogation rights. Def. Ex. E, ECF No. 10-5.

On November 16, 2022, Great American filed the instant four-count Complaint [ECF No. 1] against Lexington, alleging claims of tortious interference with a contractual relationship (Count 1), declaratory judgment (Count 2), trespass to chattels (Count 3), and attorneys' fees under the Indiana general recovery rule (Count 4). Lexington filed the instant Motion to Dismiss [ECF No. 10] on December 22, 2022, which is now fully briefed.

## ANALYSIS

In the Motion to Dismiss, Lexington argues that Great American fails to state a claim on each of the four counts of the Complaint. The Court considers each in turn.

**A.  Tortious Interference with a Contractual Relationship (Count 1)**

In the claim for tortious interference with a contractual relationship, Great American alleges that Lexington knew of the existence of the AOI between Great American and Figg and the perfected UCC Financing Statement filed by Great American; that Lexington intentionally and wrongfully alleged a competing interest in the Net Award Amount; Lexington's actions interfered with satisfaction of Great American's right to payment of the Net Award Amount as provided in the AOI and UCC Financing Statement; Lexington's conduct was unjustified and its continuing conduct after notice from Great American was intentional and wrongful and not supported by law; and Great American has been damaged by Lexington's intentional and wrongful actions. Compl. ¶¶ 40–45.

Under Indiana law, a claim of tortious interference with a contractual relationship requires a plaintiff to show the "(1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136 N.E.3d 208, 214 (Ind. 2019) (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994)). For purposes of the instant motion, Lexington does not dispute the existence of a valid and enforceable contract between Great American and Figg or that it was aware of the AOI. Rather, Lexington argues that Great American has failed to allege facts to plausibly state a claim as to the remaining three elements.

1.  *Intentional Inducement of Breach of Contract*

Great American alleges that Lexington's action of writing to CAB to assert a subrogation right in the Net Award Amount interfered with satisfaction of Great American's right to payment of the Net Award Amount from Figg as provided in the AOI and UCC Financing Statement.

Lexington first argues that Great American has failed to allege that Lexington induced *Figg* to breach the AOI because Lexington communicated only with CAB, which is not a party to the AOI, and because CAB deposited the Net Award Amount in interpleader with the state court, meaning that Figg never possessed the award. In response, Great American cites the Restatement (Second) of Torts § 766, which provides that the interference may be "by inducing *or otherwise causing* the third person not to perform the contract." Restatement (Second) of Torts § 766 (1979) ("Intentional Interference with Performance of Contract by Third Person") (emphasis added); *see also Levee v. Beeching*, 729 N.E.2d 215, 222 (Ind. Ct. App. 2000) (relying on the Restatement (Second) of Torts for guidance on a tortious interference claim (citing *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n*, 571 N.E.2d 282, 284–85 (Ind. 1991); *Bradley v. Hall*, 720 N.E.2d 747, 751 (Ind. Ct. App. 1999)). Comment h to § 766 explains:

> The phrase "otherwise causing" refers to the situations in which A leaves B no choice, as, for example, when A imprisons or commits such a battery upon B that he cannot perform his contract with C, or when A destroys the goods that B is about to deliver to C. This is also the case when performance by B of his contract with C necessarily depends upon the prior performance by A of his contract with B and A fails to perform in order to disable B from performing for C.

Restatement (Second) of Torts § 766, cmt. h. Also, "[t]he essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other." *Id.*

Under this standard, Great American has alleged that Lexington "otherwise caused" Figg's breach when Lexington asserted an allegedly non-viable claim to the Net Award Amount, causing CAB to interplead the funds and, thereby, effectively blocking Figg's ability to satisfy its contractual obligation to Great American. In other words, Great American is alleging that Lexington prevented Figg's performance. *See, e.g.*, *Eden United, Inc. v. Short*, 573 N.E.2d 920, 925 (Ind. Ct. App. 1991) (citing Restatement (Second) of Torts § 766, cmt. f; 45 Am. Jur. 2d *Interference* § 41).[2] Moreover, Great American argues that this was Lexington's manifest intent in twice writing to CAB to stop payment of the Net Award Amount to Figg, thereby preventing Figg's satisfaction of its contractual obligation to Great American. At this stage of the litigation, Great American has pleaded sufficient facts to allege that Lexington "otherwise caused" Figg to be unable to perform under the contract.

Lexington also argues that it cannot have been the cause of any breach by Figg in August 2022. Lexington reasons that Great American alleged in its third-party state court complaint in February 2021, and the amended pleading in January 2022, that Figg was in breach of the AOI, which was well before Lexington sought payment of a portion of the Net Award Amount from

---

[2] Lexington cites *Thornton v. CMB Entertainment, LLC*, 309 F.R.D. 465, 471 (S.D. Ind. 2015), in support of its argument that Great American fails to allege that *Figg* breached its contract with Great American as a result of Lexington's letters. However, *Thornton* is inapposite because, in that case, the plaintiff agreed that he had not alleged the breach of a contract to which he was a party. *Id.*

7

CAB in August 2022. Lexington misunderstands the nature of Figg's breach alleged by Great American in this case. Here, Great American alleges that Figg had a *continuing* obligation to indemnify Great American and to turn over and assign its rights growing out of the EPC Agreement. As argued by Great American, Figg could not have turned over or assigned the Net Award Amount to Great American until the Net Award Amount was issued in July 2022, and Lexington could not have induced Figg to fail to perform that specific obligation until Lexington wrote to CAB in August 2022. Thus, Great American's earlier third-party complaint against Figg in state court does not preclude the instant claim against Lexington for "otherwise causing" Figg's non-performance in relation to the Net Award Amount.

2.  *Absence of Justification*

As cited by the Indiana Supreme Court, the Restatement (Second) of Torts suggests that the following seven factors be considered in determining whether a defendant's conduct in intentionally interfering with a contract was unjustified:

> (a) the nature of the defendant's conduct; (b) the defendant's motive; (c) the interests of the plaintiff with which the defendant's conduct interferes; (d) the interests sought to be advanced by the defendant; (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff; (f) the proximity or remoteness of the defendant's conduct to the interference; and (g) the relations between the parties.

*Winkler*, 638 N.E.2d at 1235 (quoting Restatement (Second) of Torts § 767 (1977)); *see Levee*, 729 N.E.2d at 221. "[T]he weight to be given to each consideration may differ from case to case depending upon the factual circumstances." *Winkler*, 638 N.E.2d at 1235. Nevertheless, "the overriding question is whether the defendant['s] conduct has been fair and reasonable under the circumstances." *Id.* (citing Restatement (Second) of Torts § 767, cmt. j); *see Levee*, 729 N.E.2d at 221.

Lexington contends that a plaintiff must also show that "the breach [was] malicious and exclusively directed to the injury and damage of another," quoting *Morgan Asset Holding Corp.*

*v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000).[3] This Court disagrees, following the reasoning of those courts finding that the Indiana Supreme Court has not adopted this "malice" standard:

> Nowhere in its opinion [in *Winkler*] did our supreme court discuss or even suggest that a malicious standard . . . was the appropriate standard with which to analyze the absence of justification. The supreme court's analysis clearly dictates that the overriding question in determining whether there is an absence of justification is whether the defendant's conduct was fair and reasonable under the circumstances. *Winkler*, 638 N.E.2d at 1235. This determination is reached by considering the seven Restatement factors. The mere fact that our supreme court considered that Winkler did not allege that the defendants' actions were *malum in se* or a spiteful attempt to injure is insufficient reasoning for us to adopt the malicious standard as Coke USA argues.

*Coca-Cola Co. v. Babyback's Int'l, Inc.*, 806 N.E.2d 37, 51 (Ind. Ct. App. 2004) (declining to follow *Morgan Asset Holding Corp.*), *vacated on other grounds*, 841 N.E.2d 557, 560 (Ind. 2006);[4] *see also Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 863 (7th Cir. 2002) ("[T]he defendants are wrong to argue that Indiana requires that the interference be 'malicious'; it's enough if it's intentional and unjustified." (citing *Winkler*, 638 N.E.2d at 1235; *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 186 F.3d 815, 822–23 (7th Cir. 1999)));[5] *Montgomery v.*

---

[3] In support of this "malice" requirement, *Morgan Asset Holding Corp.* relies on the Indiana Court of Appeals decision in *Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597, 600–01 (Ind. Ct. App. 1993), *aff'd*, 638 N.E.2d 1228 (1994). On transfer, however, the Indiana Supreme Court in *Winkler* applied the seven Restatement factors and did not articulate a "malice" requirement. *See Winkler*, 638 N.E.2d at 1235; *see also Montgomery v. Lake County*, No. 2:04-CV-49, 2005 WL 8170103, at *3–5 (N.D. Ind. Mar. 11, 2005) (noting that the Indiana Supreme Court in *Winkler* had not adopted the malice requirement later cited in *Morgan Asset Holding Corp.*).

[4] Recently, the Indiana Supreme Court in *American Consulting, Inc.* recognized, but did not resolve, this issue of whether there is a "malice" requirement for proving the absence of justification. 136 N.E.3d at 215 (finding that, under either standard, summary judgment was precluded because there was evidence both that the defendant had a legitimate business purpose for its conduct and that the defendant targeted the plaintiff for an improper purpose (citing *Morgan Asset Holding Corp.*, 736 N.E.2d at 1272; *Coca-Cola Co.*, 806 N.E.2d at 49–52)). Other Indiana Courts of Appeals decisions that define "unjustified" to mean "malicious and exclusively directed to the injury and damage of another" rely on *Morgan Asset Holding Corp.* without discussing the Indiana Supreme Court decision in *Winkler* or the Court of Appeals decision in *Coca-Cola. See, e.g.*, *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 488–89 (Ind. Ct. App. 2017); *Duty v. Boys & Girls Club of Porter Cnty.*, 23 N.E.3d 768, 775 (Ind. Ct. App. 2014).

[5] In *Beanstalk Group*, the court explained that "the word 'malicious' does appear in a few cases, such as [*Morgan Asset Holding Corp.*,] but it is apparent that the 'malice' to which it refers, as in the cases that

*Lake County*, No. 2:04-CV-49, 2005 WL 8170103, at *3–5 (N.D. Ind. Mar. 11, 2005) (declining to adopt the "malice" standard from *Morgan Asset Holding Corp.* in light of *Winkler*). On the issue of "malice," the comments to Restatement § 766 explain: "There are frequent expressions in judicial opinions that 'malice' is requisite for liability in the cases treated in this Section. But the context and the course of the decisions make it clear that what is meant is not malice in the sense of ill will but merely 'intentional inference without justification.'" Restatement (Second) of Torts § 766, cmt. s. Thus, while evidence of "malice in the sense of ill will" could demonstrate unjustified conduct, such evidence is not required. *See id.* (citing Restatement (Second) of Torts § 767, cmt. k); *see also* Restatement (Second) of Torts § 767, cmt. d ("The desire to interfere with the other's contractual relations need not, however, be the sole motive.").

The Court now turns to whether Great American has alleged facts to show that Lexington's conduct was without justification—that is whether Lexington's "conduct has been fair and reasonable under the circumstances." *Levee*, 729 N.E.2d at 221. In the Complaint, Great American alleges that Lexington was "unjustified" in writing to CAB in August 2022 to ask for payment of the Net Award Amount because Lexington had neither a contractual right to nor a judgment providing a legal interest in the Net Award Amount and because Lexington knew that Great American had a perfected security interest in the Net Award Amount. Based on these allegations, which the Court must take as true at this stage of the litigation, Great American has sufficiently pleaded facts to allege that Lexington's conduct was not fair and reasonable and was thus unjustified.

Lexington contends that its conduct in writing the letters to CAB was fair and reasonable because it has an established right of subrogation by both contract and equity under Florida law in the attorneys' fees it paid for Figg's arbitration defense that were part of the Net Award

---

require proof of 'actual malice' in a defamation suit by a public figure, is intentionality rather than ill will." 283 F.3d at 863. While Lexington cites *American Commercial Lines, LLC v. Lubrizol Corp.*, 817 F.3d 548, 550 (7th Cir. 2016), in support of the "malice" rule adopted in *Morgan Asset Holding Corp.*, the Seventh Circuit's comment in *Lubrizol* was dicta because the plaintiff had abandoned the claim.

Amount. *See Aspen v. Bayless*, 564 So. 2d 1081, 1082 (Fl. 1990) (recognizing that "[a]fter an insurance company has paid a loss on behalf of its insured, it is entitled to subrogation either by express contract rights, or by equitable subrogation by operation of law" (quoting *Hough v. Huffman*, 555 So. 2d 942, 945 (Fla. Dist. Ct. App. 1990))). But there are two unresolved issues related to Lexington's assertion of its subrogation right that leave the justification of Lexington's conduct unresolved on the instant motion to dismiss.

First, on the record before the Court, Lexington has not shown that it has a right, as a matter of law, to any attorneys' fees included in the Net Award Amount. Lexington contends that "[t]he overwhelming amount of the arbitration fee award in Figg's favor was based on defense fees and expenses paid to Figg's defense counsel by Lexington." Def. Mot. 5. In support, Lexington cites only its own two letters to CAB in August 2022. *See* Compl. Exs. 6, 7. While the letters assert a right to the Net Award Amount, they do not explain *how* the Net Award Amount encompasses the fees Lexington advanced to Figg for its defense of CAB's claims. The arbitration panel awarded the fees based on its findings on Figg's counterclaim that CAB materially breached the EPC Agreement by its wrongful termination of Figg and that CAB breached the covenant of good faith and fair dealing set out in the EPC Agreement. *See* Compl. Ex. 4, pp. 75–76 ("Accordingly, we find [Figg] is entitled to an award of reasonable attorney's fees and costs directly arising out of CAB's wrongful termination of [Figg]."). As argued by Great American, Lexington did not pay for the prosecution of Figg's counterclaim against CAB, which Figg funded itself—a fact that Lexington acknowledges in its motion.[6] Moreover, the Net Award Amount was the sum of both the award to Figg on its counterclaim as well as attorneys' fees and costs on its counterclaim, which were then offset by the award to CAB on its claim

---

[6] Acknowledging that the fee award was predicated on Figg's counterclaim, Lexington argues in its reply brief that its defense of Figg was indispensable, given that CAB initially sought over $92 million in damages but that the damages award against Figg was reduced to approximately $3.7 million by the arbitration panel. Thus, Lexington reasons that it was only the reduced damages award that allowed for the Net Award Amount in favor of Figg. This reasoning to explain why Lexington is entitled to a portion of the Net Award Amount further shows that questions of fact remain on this issue.

against Figg. Neither party has addressed the issue of what portion, if any, of the Net Award Amount constitutes the award of attorneys' fees.

Second, even if Lexington has a right of subrogation against Figg to any attorneys' fees Figg recovers, Lexington has not attempted to show that its right of subrogation is superior to Great American's perfected security interest in the Net Award Amount. Great American has alleged that, by virtue of the AOI and the UCC Financing Statement, it "has a legal, contractual, perfected, first, best and superior right to payment of the Net Award Amount, to the exclusion of all others." Compl. ¶ 32. Great American has alleged that Lexington has not obtained a judgment entitling it to the recover any sums from Figg. Thus, there are legal and factual questions to be resolved on whether Lexington's conduct was fair and reasonable.

3. *Damages*

Lexington argues in its opening brief, but abandons in its reply, that Great American has offered nothing more than a conclusory recitation of damages. However, Great American responds, and Lexington does not contest, that it will have been damaged by the delay in receiving the money as a result of Lexington asserting a competing interest in the money.

**B.     Trespass to Chattels (Count 3)**

In Count 3, Great American alleges that the Net Award Amount constitutes Great American's chattel because of its legal, contractual, perfected, first, best, and superior right to recover the Net Award Amount under the AOI and UCC Financing Statement; Lexington dispossessed, or otherwise deprived, Great American of the Net Award Amount; and Lexington's conduct was wanton and malicious. Compl. ¶¶ 52–55. Under Indiana law, a claim of trespass to chattels requires the plaintiff to show at least one of the following: (1) that the defendant dispossessed the plaintiff of its chattel; (2) that the defendant impaired the chattel's condition, quality, or value; (3) that the defendant deprived the plaintiff of the use of its chattel for a substantial time; *or* (4) that the defendant harmed some other thing in which the plaintiff had a legally protected interest. *See Coleman v. Vukovich*, 825 N.E.2d 397, 407 (Ind. Ct. App.

12

2005) (citing *Terrell v. Rowsey*, 647 N.E.2d 662, 666 (Ind. Ct. App. 1995) (recognizing that the Restatement sets out the requirements for a when "a trespasser is liable to the *possessor* of a chattel" (citing Restatement (Second) of Torts § 218) (emphasis added))).

Lexington argues that Great American could not be dispossessed of the chattel because Great American never possessed the Net Award Amount, which was in CAB's possession until it was deposited in interpleader with the state court. In response, Great American argues that "dispossession" does not require the removal of a physical possession, citing dictionary definitions of "dispossession." The response is not well taken as the Restatement (Second) of Torts § 218, which Indiana courts have adopted, is titled "Liability to Person in Possession." Restatement (Second) of Torts § 218; *see Terrell*, 647 N.E.2d at 666. "Possession of a chattel" is defined in the Restatement as "one who has *physical control* of the chattel with the intent to exercise such control on his own behalf, or on behalf of another." Restatement (Second) of Torts § 216 (emphasis added). The Restatement provides that "[a] trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Id.* § 217. And the Restatement identifies five ways that a dispossession maybe intentionally committed:

> (a) taking a chattel from the possession of another without the other's consent, or
> (b) obtaining possession of a chattel from another by fraud or duress, or
> (c) barring the possessor's access to a chattel, or
> (d) destroying a chattel while it is in another's possession, or
> (e) taking the chattel into the custody of the law.

*Id.* § 221. Because Great American does not satisfy the definition of a "person in possession" of the Net Award Amount, Great American cannot state a claim for trespass to chattels under this standard, and the Court grants the motion to dismiss the trespass to chattels claim.[7]

---

[7] In its response, Great American relies only on a cause of action based on Restatement (Second) of Torts § 218 for liability to a "person in possession" of a chattel and does not address whether it has a claim as a "person entitled to future possession" set out in Restatement (Second) of Torts § 220.

### C. Declaratory Judgment (Count 2)

In the claim for declaratory judgment in Count 2, brought pursuant to 28 U.S.C. § 2201, Great American asks the Court to resolve the controversy as to whether Lexington has any legal interest in the Net Award Amount and, if any such legal interest exists, whether Great American or Lexington has a priority interest in the Net Award Amount. Compl. ¶¶ 49, 50. Lexington seeks dismissal of this claim as duplicative of the tort claims in Counts 1 and 3. Although the claims may address overlapping issues, the request for a declaratory judgment regarding Lexington's interest in the Net Award Amount and Great American's priority in the award is separate from the relief sought in Great American's tort claims. The Court denies this request to dismiss the declaratory judgment claim.

### D. Attorneys' Fees Under Indiana's General Recovery Rule (Count 4)

In Count 4, Great American seeks attorneys' fees and costs under Indiana Code § 34-52-1-1(b) associated with enforcing its right to the Net Award Amount over Lexington, alleging that Lexington's assertion of a superior right to any portion of the Net Award Amount is frivolous, unreasonable, and groundless and is made in bad faith. Compl. ¶ 58. The statute provides that, "'[i]n any civil action, the court may award attorney's fees . . . to the prevailing party' based on (1) a claim or defense 'that is frivolous, unreasonable, or groundless'; (2) continued litigation after a claim or defense 'clearly became frivolous, unreasonable, or groundless'; (3) or litigation 'in bad faith.'" *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1252 (7th Cir. 2022) (quoting Ind. Code § 34-52-1-1(b)).

In its motion, Lexington first argues that this Indiana statute is inapplicable in federal court. However, the Seventh Circuit Court of Appeals in *Birch|Rea Partners, Inc.*, a diversity case filed in federal court, recently considered a claim for fees under Indiana Code § 34-52-1-1(b) and treated the attorneys' fee statute as substantive. *Id.* at 1251–52. The court restated that "[a] federal court sitting in diversity applies state substantive law and federal procedural law." *Id.* at 1251 (citing *DiPerna v. Chi. Sch. Pro. Psych.*, 893 F.3d 1001, 1006 (7th Cir. 2018)).

Recognizing that "[w]hen a federal rule conflicts with a state law . . . , the federal rule governs," the Seventh Circuit acknowledged the circuit split on whether state frivolous litigation statutes, comparable to Ind. Code § 34-52-1-1(b), conflict with Federal Rule of Civil Procedure 11. *Id.* at 1251–52 (comparing cases). Yet, the Seventh Circuit declined to decide the question in relation to the Indiana statute because the plaintiff's claim was not frivolous in the case before it. *Id.* at 1252. Thus, the parties should be prepared to brief, when appropriate, the issue left open by the court of appeals as to whether Indiana Code § 34-52-1-1(b) conflicts with Federal Rule of Civil Procedure 11.

Lexington also argues that the claim for fees would fail because it has a valid defense to Great American's claims, namely that it has a right to a portion of the Net Award Amount based on established principles of subrogation law. As discussed above, there are questions of law and fact that remain on that defense. Accordingly, the Court denies the motion to dismiss the claim for attorneys' fees.

## CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part Lexington Insurance Company's Motion to Dismiss [ECF No. 10] and dismisses Count 3 of the Complaint only.

SO ORDERED on April 27, 2023.

 s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT