UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:22-CV-345-TLS |
| LEXINGTON INSURANCE COMPANY, | |
| Defendant. | |

**OPINION AND ORDER**

This is an action between a surety—Plaintiff Great American Insurance Company (GAIC)—and an insurer—Defendant Lexington Insurance Company (Lexington)—to determine the right to an approximately $4.4 million Net Award in arbitration proceedings made to Figg Bridge Builders (FBB)—the surety's principal and the insurer's insured. GAIC contends its right to the Net Award derives from a perfected security interest as well as equitable subrogation, whereas Lexington argues its right to a portion of the Net Award derives from its insurance contract with FBB as well as equitable subrogation. While this Court was considering the parties' fully briefed cross motions for summary judgment, *see* ECF Nos. 57, 59, GAIC filed the instant Motion to Stay Action and Hold Motions for Summary Judgment in Abeyance [ECF No. 76]. Lexington filed a response in opposition [ECF No. 80], and GAIC filed a reply [ECF No. 81]. As set forth below, the Court denies the motion to stay.

**BACKGROUND**

A.  **The Construction Contract, CAB's Termination of FBB, and the CAB Arbitration**

In 2017, FBB entered into a construction contract with Cline Avenue Bridge (CAB) for the construction of the Cline Avenue Bridge in Lake County, Indiana. Jt. Ex. 1, ECF No. 55-1.

Lexington issued general liability and professional liability insurance policies to FBB with respect to the construction project. Jt. Exs. 8, 9, ECF Nos. 55-8, 55-9.

GAIC, as surety, executed performance and payment bonds for FBB, as principal, and in favor of CAB. Jt. Exs. 2, 3, ECF Nos. 55-2, 55-3. In consideration for its execution of the bonds, GAIC relied on an Agreement of Indemnity with FBB. Jt. Ex. 4, ECF No. 55-4. In late 2019, FBB and other indemnitors entered into a financing agreement and a collateral security agreement with GAIC after FBB requested that GAIC advance it funds for use on the project. Jt. Ex. 5, ECF No. 55-5. Between January and April 2020, GAIC advanced FBB additional funds in the amount of $14,775,000.00 to support its performance of the construction contract with CAB. Jt. Ex. 6, ECF No. 55-6.

On April 7, 2020, CAB terminated FBB from the construction project. Jt. Ex. 10, ECF No. 55-10. On July 27, 2020, CAB filed a demand for arbitration, bringing claims of breach of contract, fraud, constructive fraud, negligence, and indemnity. Jt. Ex. 12, ECF No. 55-12. FBB counterclaimed for breach of contract, unjust enrichment, quantum meruit, and conversion. *Id.* Lexington defended FBB against CAB's claims in the arbitration but declined to fund the cost of prosecuting FBB's counterclaims against CAB. Jt. Exs. 13, 14, ECF Nos. 55-13, 55-14.

With FBB's authorization, GAIC filed a UCC financing statement on August 31, 2020. Jt. Ex. 7, ECF No. 55-7.

In July 2022, the arbitration panel issued a Net Award of approximately $4.4 million to FBB, having found both CAB and FBB entitled to recover certain sums of money. Jt. Ex. 12. Specifically, the arbitration panel found that FBB defaulted under the construction contraction, although the default was not a material breach, and awarded CAB damages for corrective work in the amount of $3,706,795.00 and liquidated damages due to FBB's delay in completion of the

project in the amount of $1,560,300.00. *Id.* at pp. 72–77. The arbitration panel found that CAB had wrongfully terminated FBB and awarded FBB damages for wrongful termination in the amount of $4,939,423.98. *Id.* at p. 77. Finally, the arbitration panel found that CAB's wrongful termination of FBB was in breach of the covenant of good faith and fair dealing in the construction contract, resulting in an award to FBB of reasonable attorneys' fees and costs directly arising out of CAB's wrongful termination of FBB in the amount of $4,732,480.34. *Id.* The award of attorneys' fees as contract damages was based on FBB's submission of affidavits documenting the fees incurred in connection with the arbitration, of which Lexington had paid $3,911,986.34. *Id.* at p. 76.

CAB moved to interplead the $4.4 million Net Award in a pending state court action in Lake County, Indiana, between CAB, GAIC, and FBB; the motion was granted in September 2022. Jt. Ex. 19, ECF No. 55-19; Sept. 15, 2022 Ord., *Cline Ave. Bridge v. Great Am. Ins.*, Cause No. 45D01-2008-PL-517 (Lake Sup. Ct., Ind.). In November 2022, Lexington moved to intervene in the Lake County action. Jt. Ex. 20, ECF No. 55-20. The Lake County, Indiana, Superior Court granted Lexington's motion to intervene and confirmed the Net Award. Feb. 17, 2023 Orders, *Cline Ave. Bridge v. Great Am. Ins.*, Cause No. 45D01-2008-PL-517 (Lake Sup. Ct., Ind.). In June 2023, Lexington withdrew its objection to the distribution of the Net Award to GAIC in the Lake County action, agreeing to pursue its assertion of a right to a portion of the Net Award in this federal litigation. June 26, 2023 Notice, *Cline Ave. Bridge v. Great Am. Ins.*, Cause No. 45D01-2008-PL-517 (Lake Sup. Ct., Ind.). The Net Award was distributed to GAIC, which is holding the Net Award pending resolution of the instant litigation. June 28, 2023 Ord., *Cline Ave. Bridge v. Great Am. Ins.*, Cause No. 45D01-2008-PL-517 (Lake Sup. Ct., Ind.).

### B. This Indiana Federal Litigation

On November 16, 2022, GAIC brought this suit against Lexington seeking a declaratory judgment regarding entitlement to the approximately $4.4 million Net Award in the CAB arbitration. ECF No. 1. GAIC contends it is entitled to the entire Net Award pursuant to its perfected security interest based on the UCC financing statement. In response, Lexington contends that it has a contractual right to approximately $3.9 million of the Net Award equal to the attorney's fees and costs awarded by the arbitration panel based on Lexington's funding of FBB's defense in arbitration. The parties' fully briefed cross motions for summary judgment are under consideration by this Court.

### C. The Pending Florida Federal Litigation Now in Arbitration

Previously, on September 16, 2021, FBB filed suit against Lexington in the United States District Court for the Northern District of Florida seeking declaratory relief. *Figg Bridge Builders, LLC v. Lexington Ins.*, 4:21-CV-378 (N.D. Fla.). In its original Complaint, FBB alleged that Lexington failed to fully defend and indemnify FBB in the CAB arbitration discussed above in violation of the insurance policies issued by Lexington to FBB related to the Cline Avenue Bridge project, in violation of Florida law. *Id.* at ECF No. 1. FBB seeks reimbursement from Lexington for the fees and costs incurred in pursuing its counterclaims, which were necessary to defeat CAB's claims of liability. *Id.* Lexington moved to compel arbitration of the claims brought in the Florida federal suit. *Id.* at ECF No. 11. The Florida federal court granted the motion to compel arbitration and stayed the case. *Id.* at ECF No. 18.

On September 18, 2023, the Florida federal court lifted the stay to allow FBB to file a Second Amended Complaint that added a bad faith claim under Indiana law against Lexington. *Id.* at ECF Nos. 37, 38. The new claim contains multiple allegations, including that Lexington

4

misrepresented its right to be reimbursed for its defense costs out of the Net Award in the CAB arbitration and that Lexington improperly intervened in the Lake County action to assert its contractual right to that reimbursement. *Id.* at ECF No. 38. In its motion to stay in the instant Indiana federal litigation, GAIC represents that one request made by FBB in the Florida arbitration is "a declaration that Lexington has no right to be reimbursed by [FBB] or of [FBB's] surety, [GAIC], for defense costs paid by Lexington in connection with the CAB Arbitration." ECF No. 77-1 at 1.

On September 26, 2025, FBB filed a motion in the Florida arbitration to join GAIC in the arbitration. Ex. A, ECF No. 77-1. However, GAIC represents in its motion that the arbitration panel has not yet been empaneled and the motion remains pending.

Thus, on December 15, 2025, FBB filed a motion in the Florida federal lawsuit to temporarily lift the administrative closure for purposes of filing the motion to join GAIC to the pending arbitration as a respondent; the Florida federal court granted the motion to lift the stay. Ex. B, ECF No. 77-2; *see also* ECF Nos. 50, 51, 4:21-CV-378 (N.D. Fla.). On December 19, 2025, FBB filed its motion for joinder in the Florida federal lawsuit. ECF No. 77-1; *see also* ECF No. 52, 4:21-CV-378 (N.D. Fla.). FBB contends that the competing claims of GAIC and Lexington to the same funds and the overlapping factual and legal questions create a risk of inconsistent rulings if the matters proceed in separate forums. ECF No. 77-1, p. 2. Thus, FBB asserts that joinder of GAIC in the Florida arbitration is necessary to ensure all related claims are resolved efficiently, fairly, and consistently. *Id.*[1] GAIC consents to the joinder. *Id.* p. 12.

---

[1] In its opening brief, GAIC represents that "FBB also contends that, because the Lexington policies are governed by Florida law, the Florida arbitration is the appropriate venue for resolving questions concerning the rights and obligations under the policies." ECF No. 77, p. 6. However, FBB's Motion for Joinder does not make that argument. *See* ECF No. 77-1.

On January 12, 2026, Lexington filed a response in opposition, arguing primarily that the law and the relevant arbitration provisions do not allow the Florida court to force Lexington to arbitrate any claims against a non-signatory to the insurance policy arbitration provisions, such as GAIC. As of this ruling, the motion for joinder has not been resolved by the Florida federal court. ECF No. 80-1; *see also* ECF No. 55, 4:21-CV-378 (N.D. Fla.).

## ANALYSIS

In its opening brief, GAIC invokes the *Colorado River* abstention doctrine to ask the Court to stay this federal action against Lexington, representing that GAIC may be joined in a related arbitration in Florida stemming from a federal case brought by FBB against Lexington. GAIC argues that the Florida arbitration would render this federal civil action duplicative. Lexington responds that *Colorado River* abstention is not applicable, that GAIC has waived any opportunity to attempt to arbitrate this dispute that has been pending for three years, and that, even if *Colorado River* abstention were applicable, every factor weighs against abstention.

A federal court's ability to abstain from a case that falls within its jurisdiction "'is the exception, not the rule,' and can be justified only in exceptional circumstances." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)); *see Mata v. Lynch*, 576 U.S. 143, 150 (2015) ("[W]hen a federal court has jurisdiction, it also has a virtually unflagging obligation to exercise that authority." (cleaned up)); *Richwine v. Matuszak*, 148 F.4th 942, 950 (7th Cir. 2025) ("But abstention from the exercise of federal jurisdiction is the exception, not the rule." (cleaned up)).

In its opening brief, GAIC contends that the abstention it seeks is "akin" to the *Colorado River* abstention doctrine, which "authorizes federal courts to defer to parallel state-court proceedings in exceptional cases where abstention would promote wise judicial administration."

*Braid v. Stilley*, 142 F.4th 956, 969 (7th Cir. 2025) (cleaned up); *see Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). A district court must make a two-part inquiry to determine whether *Colorado River* abstention should apply: (1) whether the concurrent state and federal actions are parallel and (2) if so, whether exceptional circumstances justify abstention, which involves weighing ten non-exclusive factors. *See Tyrer v. City of S. Beloit*, 456 F.3d 744, 751 (7th Cir. 2006); *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). However, "the analysis called for by *Colorado River* is necessary only in situations in which the federal court is attempting to avoid interference with a complex state administrative apparatus." *GeLab Cosmetics LLC v. Zhuhai Aobo Cosmetics Co.*, 99 F.4th 424, 428 n.1 (7th Cir. 2024).

In its response brief, Lexington argues that *Colorado River* is inapplicable because there is no parallel state proceeding but that, even if the doctrine is applied, abstention is not warranted. In its reply brief, GAIC shifts the legal basis for requesting a stay to the Court's inherent authority to control its docket. ECF No. 81, p. 3–4. GAIC notes the Court's "inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants' including the power to stay a matter." *Id.* (quoting *Joyner v. Tyson Foods, Inc.*, No. 1:07-CV-141, 2007 WL 9751846, at *1 (S.D. Ind. May 3, 2007) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))); *GeLab Cosmetics*, 99 F.4th at 428 n.1 (explaining that a "federal court's decision to stay its hand until some other event occurs could be seen as a simple case-management measure").[2]

---

[2] In its reply brief, GAIC also cites for the first time a three-factor balancing test for a stay incidental to the court's inherent power: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Berkeley*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2019 WL 1077124, at *5 (N.D. Ill. Mar. 7,

The Court finds that a stay is not appropriate in this case. Over three years ago, GAIC filed this federal lawsuit against Lexington under the Court's diversity jurisdiction, asking the Court to resolve their dispute over entitlement to the Net Award made in the CAB arbitration. The Court previously ruled on a motion to dismiss, the parties conducted discovery and participated in a judicial settlement conference, and the parties' fully briefed motions for summary judgment are being considered by the Court. Thus, the Court finds that, in terms of "simple case management," it is in the best interest of the Court, counsel, and the parties for the Court to resolve the pending cross motions for summary judgment.

Moreover, having considered the parties' briefing of the ten *Colorado River* balancing factors, there is no "serious threat of interference" with the Florida arbitration by the Court resolving this litigation. *See Vega v. Chi. Bd. of Educ.*, 109 F.4th 948, 957 (7th Cir. 2024) ("Where there is no serious threat of interference, federal courts have a 'virtually unflagging obligation' to resolve the questions before them." (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 817)). As an initial matter, it is not clear that the proceedings are parallel. Although FBB has moved in the Florida federal litigation to have GAIC joined in the arbitration as a respondent to FBB's claim, that motion has not yet been ruled on by the Florida court. Even if the motion is granted and GAIC is joined in the arbitration, it is not clear that the Florida arbitration would directly resolve the issue in this case regarding entitlement to the approximately $4.4 million Net Award from the CAB arbitration. In this litigation, GAIC contends that it has a perfected security interest in the Net Award based on the Agreement of Indemnity and the filed financing statement; Lexington contends that it has a contractual right to approximately $3.9 million of the Net Award because part of the arbitration award to FBB was

---

2019) (citation omitted). Although untimely raised, the Court finds that these factors are effectively encompassed within the *Colorado River* factors discussed below for purposes of the instant motion.

for certain "attorney's fees and costs," including for attorney's fees and costs Lexington paid on behalf of FBB in the arbitration. However, the only related issued GAIC has identified in the Florida arbitration is that FBB seeks a declaration "that Lexington has no right to be reimbursed by [FBB] or [FBB's] surety, [GAIC], for defense costs paid by Lexington with the CAB Arbitration." ECF No. 77-1, p. 1. GAIC has not identified the priority between GAIC and Lexington regarding the Net Award from the CAB arbitration as an issue in the Florida arbitration. Said differently, even if the Florida arbitration were to determine that Lexington has a contractual right to be reimbursed by FBB or GAIC, that determination does not resolve the issue of priority in the Net Award.

Consideration of the ten *Colorado River* balancing factors also strongly weighs against abstention. The ten factors are whether the state has assumed jurisdiction over property; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; the order in which jurisdiction was obtained by the concurrent fora; the source of governing law; the adequacy of state-court action to protect the federal plaintiff's rights; the relative progress of state and federal proceedings; the presence or absence of concurrent jurisdiction; the availability of removal; and the vexatious or contrived nature of the federal claim. *GeLab Cosmetics*, 99 F.4th at 430–31.

Florida has not assumed jurisdiction over the Net Award, as GAIC is in possession of the Net Award pending final resolution of this matter. This federal forum is not inconvenient, as GAIC chose it, and the parties' cross motions for summary judgment are fully briefed and under advisement. As just discussed, abstention would not avoid piecemeal litigation because the Florida arbitration would not resolve all the issues in this case, and either party could seek a setoff or argue issue preclusion if warranted. Both parties agree that this Court obtained

jurisdiction over this fee award dispute shortly before the Florida arbitration, and, as of this Opinion, GAIC has not even been joined in the Florida action. Although GAIC argues that Florida law will predominate this issue, GAIC primarily relies on federal law and Indiana state law in its summary judgment briefs. As for whether the Florida arbitration would protect GAIC's rights, GAIC believes it would, which is why GAIC seeks the stay. However, as the non-movant, Lexington rightly notes that its interests in the time and money it has spent in this federal litigation weigh against the stay. While this federal proceeding is near its end with an anticipated ruling on the pending summary judgment motions, the arbitration panel has not yet been chosen. As for the presence or absence of concurrent jurisdiction, GAIC is not yet a party to the Florida arbitration. Removal is not at issue because there is no parallel state proceeding that could be removed. Finally, the nature of the federal claim is neither vexatious nor contrived as originally brought by GAIC over three years ago and vigorously litigated by the parties.

Accordingly, whether considered as a matter of the Court's management of its docket or under the more exacting *Colorado River* abstention doctrine, a stay of these proceedings in favor of a possible arbitration in Florida is not warranted.

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES the Plaintiff's Motion to Stay Action and Hold Motions for Summary Judgment in Abeyance [ECF No. 76].

SO ORDERED on February 12, 2026.

        s/ Theresa L. Springmann  
        JUDGE THERESA L. SPRINGMANN  
        UNITED STATES DISTRICT COURT